[No. A067805. First Dist., Div. Five. Nov. 13, 1995.]

KRAY CABLING COMPANY, INC., Plaintiff, v.
COUNTY OF CONTRA COSTA, Defendant.

DIVISION OF LABOR STANDARDS ENFORCEMENT, Plaintiff and
Appellant, v.
KRAY CABLING COMPANY, INC., Defendant and Respondent;
COUNTY OF CONTRA COSTA, Respondent.

COUNSEL

Ramon Yuen-Garcia for Plaintiff and Appellant.

Thierman Law Firm, Mark R. Thierman and George P. Parisotto for Defendant and Respondent.

Dan G. Ryan for Respondent County of Contra Costa.

## OPINION

HANING, J.—The Division of Labor Standards Enforcement (DLSE) appeals a judgment by court trial in favor of respondent Kray Cabling Company, Inc., on the DLSE's action for wage deficiencies. It contends the trial court erred in concluding its action was time barred, and in awarding respondent attorney fees under Code of Civil Procedure section 1028.5. We affirm.

## FACTS

The facts are not disputed. On July 8, 1992, Contra Costa County (County) issued a purchase order to Data General Corporation for computer hardware and its installation at Merrithew Hospital, a County facility. On September 9, 1992, Data General entered into a contract with Premises One for the installation. In November 1992 Premises One subcontracted the installation to respondent. During installation the California Office of Statewide Health Planning and Development (State) determined that the hospital's existing electrical system was inadequate to support the new computer system. On February 25, 1993, the County issued a purchase order directly to respondent to bring the electrical system up to state requirements.

The State required the County to engage an approved inspector to monitor the electrical work and verify its completion. On May 31, 1993, Joe Fliutzi, the inspector so hired, accepted the work as complete. On July 8, 1993, the County accepted the computer project as complete.

While the computer installation and accompanying electrical work were taking place, the DLSE determined that the electrical work was a public works project as defined by Labor Code sections 1720 and 1771[1] —construction, alteration, demolition or repair costing more than $1,000 and paid from public funds. Employees engaged in such projects are required to be paid the prevailing wage for the county in which the project is located.

On September 24, 1993, the DLSE issued respondent a "Notice of Payment Due" for underpayment of prevailing wages paid to its electrical work employees. On October 19, 1993, it filed the instant action for wage deficiencies and penalties.[2] The trial court ruled the action was barred by the statute of limitations set forth in section 1775, insofar as it was not brought within 90 days after the County's acceptance of respondent's electrical work.

## DISCUSSION

### I

The DLSE contends the applicable statute of limitations had not expired when it filed its action against respondent. Section 1775 provides

---

[1] Unless otherwise indicated, all further statutory references are to the Labor Code.

[2] Respondent, anticipating the DLSE's action, filed an indemnity action against the County (C93-03721). It was consolidated with the DLSE's action (C93-04760) and the issues of liability and damages bifurcated for trial. Respondent and the County dismissed their action without prejudice following the decision in respondent's favor against the DLSE, with the agreement that respondent could refile its action against the County if the appellate court reversed the judgment against the DLSE.

that a public works contractor engaged for a public works project shall pay the state or political subdivision a penalty when its workers are paid less than the prevailing rates. If there is insufficient money due a contractor from the political subdivision awarding the project to cover such penalties, "the awarding body shall notify the [DLSE] of the violation and the [DLSE] . . . may maintain an action in any court of competent jurisdiction to recover the penalties and the amounts due provided in this section. This action shall be commenced not later than 90 days after the filing of a valid notice of completion in the office of the county recorder in each county in which the public work or some part thereof was performed, or not later than 90 days after acceptance of the public work, whichever last occurs."

The DLSE's action was filed 103 days after the County accepted the computer installation, of which the electrical work—albeit a separate purchase order—was an integral part, and 141 days after respondent's work was accepted by Inspector Fliutzi. No notice of completion was ever recorded in the County. The DLSE argues that section 1775's phrase "whichever last occurs" requires that both filing a valid notice of completion *and* an acceptance of the work must occur for the 90-day limitation period to start running. It then argues that insofar as the completion notice was never filed, there has not yet been a "last" occurrence to trigger the running of the 90 days, because "last" means the final event in a series of events, so in fact the statute has "not even begun to run." Respondent's position is that either event triggers the statute.

We conclude the statute is ambiguous, and therefore requires judicial interpretation. The ambiguity is caused by the phrase "whichever last occurs" in conjunction with the disjunctive "or" interposed between the two events triggering the statute of limitations: (1) "filing of a valid notice of completion" and (2) "acceptance of the public work."

■ "The fundamental objective of statutory interpretation is to ascertain and effectuate the legislative intent. [Citation.] In determining such intent we look first to the words of the statute themselves, giving them their usual and ordinary meaning. [Citation.]" (*City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74, 90 [260 Cal.Rptr. 520, 776 P.2d 222].) " 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]" (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224].)

The ordinary, familiar meaning of "or" is a delineation of alternatives. (See Webster's New Collegiate Dict. (1981) p. 800.) The use of this disjunctive reflects a legislative intent that either event, standing alone, may trigger the statute of limitations. The phrase "whichever last occurs" is included so that *if* both events have taken place, the potential parties will know which of them applies for limitation purposes.

That the Legislature did not intend both a notice of completion and acceptance of the work to be a prerequisite for the commencement of the statute of limitations may be inferred by a comparison of section 1775 to section 1730. These two sections were amended and added, respectively, by the same enactment (Stats. 1992, ch. 1342) and are contained in the same chapter of the Labor Code. (§ 1720 et seq. [Public Works].) "Where the same word or phrase might have been used in the same connection in different portions of a statute but a different word or phrase having different meaning is used instead, the construction employing that different meaning is to be favored. [Citations.]" (*Playboy Enterprises, Inc.* v. *Superior Court* (1984) 154 Cal.App.3d 14, 21 [201 Cal.Rptr. 207].) Section 1730 requires a public entity to transfer all wages and penalties withheld from a contractor for failure to pay the prevailing wage to the Labor Commissioner "within 90 days after the completion of the contract *and* formal acceptance of the job" (italics added) whenever the contractor fails to bring an action against the public entity for recovery of such wages and penalties. Use of the conjunction "and" in section 1730 indicates a contrasting meaning to section 1775's disjunctive "or." In the former the public entity must act after both events occur, and in the latter either event allows an action.

Our conclusion is further based on reading section 1775 in conjunction with Civil Code section 3093, governing notices of completion of works of improvement. Section 1775 refers to the filing of a *valid* notice of completion. A notice of completion is a written notice, signed and verified by the property owner, containing specified information about the improvement. (Civ. Code, § 3093.) It must be recorded in the county recorder's office within 10 days of completion. If it is not timely filed, it is invalid. (See *Doherty* v. *Carruthers* (1959) 171 Cal.App.2d 214, 216 [340 P.2d 58].) In the case of a work of improvement subject to acceptance by a public entity, the completion of the improvement is the date of the public entity's acceptance. (Civ. Code, § 3086.)

As this case demonstrates, a situation may easily exist where it becomes impossible to file a valid notice of completion because the 10-day period for

doing so has expired. If we were to accept appellant's contention that a notice of completion is deemed valid even though untimely filed, a contractor potentially liable for a section 1775 action would be subject to an indefinite statute of limitations if section 1775 required both acceptance of the project and the filing of a notice of completion for commencement of the statute of limitations. The purpose of the notice of completion is to protect property owners by shortening the time period in which lien notices may be filed against them. (*Gary C. Tanko Well Drilling, Inc.* v. *Dodds* (1981) 117 Cal.App.3d 588, 594 [172 Cal.Rptr. 829].) The property owner may, however, deliberately or inadvertently fail to file a notice of completion for weeks, months, or years after actual completion. If an untimely notice of completion were deemed valid, the contractor would thus be subject to legal action much longer than 90 days after the project was completed because only the property owner, not the contractor, can file the notice of completion. (Civ. Code, § 3093.) ■ Such an indefinite, unknown period would thwart the purpose of statutes of limitations, which are designed to provide repose and protection against the burden of defending against stale claims. (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 787 [157 Cal.Rptr. 392, 598 P.2d 45].)

■ The DLSE complains that this ruling will foreclose it from pursuing valid actions because (1) it cannot monitor all public entities for dates of acceptance of public works, (2) it has to contend with a 90-day period of limitations, and (3) its investigations and the timing of the claims coming to it do not allow adequate time for commencing legal action. The only solution to the DLSE's complaint is to seek assistance from the Legislature.

## II

The DLSE also contends that attorney fees were improperly awarded under Code of Civil Procedure section 1028.5, which provides that if a small business prevails in a civil action between it and a state regulatory agency, the court may award the business reasonable litigation costs up to $7,500 if it determines the action was undertaken without substantial justification.

The judgment against the DLSE on its section 1775 action against respondent was filed on October 3, 1994, and the DLSE timely appealed therefrom on November 3, 1994. According to respondent's opening brief, it moved for fees after entry of judgment and they were awarded on January 18, 1995. Such an order is appealable as an order after judgment (Code Civ. Proc., § 904.1, subd. (a)(2)), but according to the record on appeal the DLSE never did so and the time therefor has now expired. The DLSE may not now challenge the fee award.

## DISPOSITION

The judgment is affirmed.

Peterson, P. J., and King, J., concurred.