Filed 4/28/16 Manzano v. Olive View Hospital CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RICARDO MANZANO, | B263192 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC053182) |
| v. | |
| OLIVE VIEW HOSPITAL, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elia Weinbach, Judge.  Affirmed.

Alder Law, Michael Alder, Lyssa A. Roberts, and Jennifer P. Burkes for Plaintiff and Appellant.

Law Offices of David J. Weiss, David J. Weiss and Sigalit Noureal; Pollak, Vida & Fisher, Daniel P. Barer for Defendants and Respondents.

_____

Plaintiff and appellant Ricardo Manzano appeals from a summary judgment entered in favor of defendants and respondents Olive View Hospital (Olive View), the County of Los Angeles, and the County of Los Angeles Department of Mental Health. The underlying action for damages arose out of an incident in which Manzano sustained injuries while a psychiatric patient at Olive View. We conclude Manzano's complaint is barred by statutory immunity. The judgment is affirmed.

**FACTUAL AND PROCEDURAL SUMMARY**

Olive View is a County of Los Angeles hospital which operates and maintains a licensed psychiatric unit. Manzano initially was admitted to the Olive View psychiatric unit on June 4, 2011, pursuant to Welfare and Institutions Code section 5150.[1] He subsequently was placed on a 14-day hold pursuant to Welfare and Institutions Code section 5250.[2] Manzano was discharged on June 17, 2011,[3] and while he was home he jumped off the roof of his house and later grabbed a knife and held it to his stomach. On June 19, 2011, he returned to Olive View and again was placed on a Welfare and Institutions Code section 5150 three-day hold. On June 21, 2011, he was admitted to the inpatient psychiatric unit and subsequently placed in a single patient room on the sixth floor. He was monitored every 15 minutes and was observed in his bed throughout the night. The checks continued until 8:15 a.m. the next morning. Sometime around 8:30

---

[1]     Welfare and Institutions Code section 5150 provides a county facility the authority to place a person, who as a result of a mental health disorder, is a danger to himself or others, into custody for a period up to "72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment. "

[2]     Welfare and Institutions Code section 5250 provides: "If a person is detained for 72 hours under the provisions of Article 1 (commencing with Section 5150) . . . and has received an evaluation, he or she may be certified for not more than 14 days of intensive treatment related to the mental health disorder."

[3]     There is a factual dispute whether Manzano's family signed him out pursuant to or against medical advice.

2

a.m., Manzano ripped out the Plexiglass covering the window, broke the window, climbed out on the window ledge, pulled himself back up through the window, lowered himself out the window again, and then either jumped or fell from the window, sustaining serious injuries.

Through his guardian ad litem, Manzano brought this claim against respondents. In the second amended complaint, the operative pleading, he alleged causes of action for dangerous condition of public property (Gov. Code, § 835);[4] public employee negligence giving rise to vicarious liability of public entity (§ 815.2); public employee negligence (§ 820); failure to provide sufficient equipment, personnel, or facilities (§ 855); breach of a mandatory duty (§ 815.6); "recklessness in violation of dependent abuse act" (Welf. & Inst. Code, § 15600); and professional negligence.

Defendants moved for summary judgment on the grounds of immunity from liability under sections 856.2 and 854.8, and alternatively, that the undisputed facts established as a matter of law that defendants were not liable for each cause of action. Section 856.2, subdivision (a)(1) provides immunity for a public entity for injuries "caused by an escaping or escaped person who has been confined for mental illness," and section 854.8, subdivision (a)(2) provides that a public entity is not liable for an "injury to an inpatient of a mental institution."

Defendants asserted Manzano was escaping when he fell from the window because, after being admitted as an inpatient, he voluntarily left the psychiatric ward through the window, and because he admitted he was escaping. In support, defendants submitted a neurological consultation report prepared by plaintiff's expert, H. Ronald Fisk, M.D. Dr. Fisk's report notes that the patient wanted to break out of his room, "possibly by breaking out the window" and that the patient had the "vague sense that the reason he contemplated breaking the window in order to escape was because he thought he would jump to an adjacent building which was only three stories down."

Defendants also relied on the declaration of Robert Pyke, a construction manager

---

[4]     Subsequent section references are to the Government Code, unless otherwise stated.

3

and licensed contractor with expertise in psychiatric facilities and treatment centers. His declaration supported their argument that the Plexiglass barrier and secured windows in Manzano's room conformed to the requirements of applicable building codes, including the code section governing the design and construction of windows in psychiatric units.

In opposition, Manzano argued that section 856.2 did not apply because Manzano was not attempting to escape; rather, he was attempting to hurt himself by jumping out of the sixth floor window. In support, Manzano cites deposition testimony from Dr. Benjamin Woo, a physician at Olive View, noting that when Manzano was admitted there he had ceased all personal care actions (including feeding himself), was observed hitting himself against a wall and door while an inpatient on June 13, 2011, engaged in "impulsive behavior," had been noted as being at risk of self harm four days before, on June 17, 2011, and that when he was home with his family between June 17, 2011 and June 19, 2011, he jumped off the roof, and later grabbed a knife and held it to his stomach.

Regarding section 854.8, Manzano cited an exception under section 855, which provides that a public entity remains "'liable for injury proximately caused by [the failure of the public entity] to provide adequate or sufficient equipment, personnel or facilities'" substantially equivalent to those "'required by any statute or any regulation of the State Department of Health Services, Social Services, Developmental Services, or Mental Health prescribing minimum standards.'" In support, Manzano submitted the declaration of Brad Avrit to the effect that the Plexiglass was not of adequate size to cover the window, that the tamper proof screws were either loose or missing, and that failing to ensure the Plexiglass was securely affixed to the window with a sufficient number of undamaged bolts constituted a violation of the California Code of Regulations, title 22, section 70583, which requires that windows in psychiatric units be "modified to prevent patients from leaving the unit by way of a window."

Defendants objected to the admissibility of Avrit's declaration on the grounds that it lacked foundation, personal knowledge, and authenticity because he failed to attach the records relied upon in forming his opinion. The court sustained the objection. Manzano

4

objected to Pyke's declaration on hearsay grounds; the court overruled that objection.

The court ruled that defendants were immune under section 856.2, finding that Manzano, "in going through the window, was clearly leaving the facility" and that because he was confined, "'[h]is leaving the facility constituted "escape" from the facility as a matter of law.'" The court found the fact that Manzano "intended to harm himself is not relevant." Defendants' motion for summary judgment was granted and judgment was entered in defendants' favor.

This timely appeal followed.

## DISCUSSION

We review the trial court's ruling on a motion for summary judgment de novo, viewing the evidence in the light most favorable to the opposing party. (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499.) We consider all of the evidence offered by the parties in connection with the motion, except that which the court properly excluded. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A moving defendant meets its burden by showing that an essential element of a cause of action cannot be established, or by establishing a complete defense to the cause of action. The burden then shifts to the plaintiff to show that a triable issue of material fact exists as to the cause of action or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849; Code Civ. Proc., § 437c, subd. (p)(2).)

I

As a preliminary matter, defendants argue that the trial court's judgment must be affirmed because Manzano failed to present an adequate record on appeal. An appellant who elects to proceed by appendix is required to include, among other things, any document filed in the trial court which "is necessary for proper consideration of the

5

issues, including . . . any item that the appellant should reasonably assume the respondent will rely on." (Cal. Rules of Court, rule 8.124(b)(1)(B).) "Where the appellant fails to provide an adequate record of the challenged proceedings, we must presume that the appealed judgment or order is correct, and on that basis, affirm. [Citations.]" (*Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 644.)

Manzano submitted an appendix which omitted the operative complaint, defendants' objections to evidence submitted by Manzano in opposition to the motion for summary judgment, defendants' opposition to Manzano's objections to defendants' evidence in support of their motion for summary judgment, and defendants' separate statement of undisputed material facts filed in reply. In his reply brief, Manzano argues the omitted documents were not necessary for appellate review of the judgment. While these documents were necessary for our review, defendants filed a respondents' appendix that included all of the improperly omitted documents. We therefore review the trial court's summary judgment ruling on the merits.

II

A public entity is immune from liability for damages resulting from an injury "caused by an escaping or escaped person who has been confined for mental illness." (§ 856.2, subd. (a)(1).) It is undisputed that Olive View is a public entity and that Manzano was confined for mental illness. On appeal, the only issue is whether there is a dispute of material fact as to whether Manzano was escaping when he fell from the window.

In *Brookhouser v. State of California* (1992) 10 Cal.App.4th 1665 (*Brookhouser*), a mentally ill person was struck by an automobile two days after failing to return after an approved leave from a private, unlocked board and care facility. In discussing whether the plaintiff was an "escaped" person, the court concluded that "a mental patient may be 'an escaping or escaped person,' within the meaning of section 856.2, even if he or she does not intend to escape and even if he or she does not and cannot understand that he or she is in fact escaping." (*Id.* at p. 1683.) Accordingly, the court found that the patient's

6

failure to return to the facility from her approved leave, "constituted her an 'escaped person' within the meaning of Government Code section 856.2 regardless *why* she did not return." (*Id.* at p. 1686.)

Manzano maintains this case is distinguishable because, in *Brookhouser*, the patient was injured after failing to return to the facility from an authorized leave, rather than as a result of the facility's violation of a mandated regulation. To support his position, Manzano argues that defendants' alleged violation of the California Code of Regulations, title 22, section 70583 (inadequate modification of a window in a psychiatric unit) negates defendants' immunity. The immunity of section 856.2 cannot be negated by negligence or regulatory violations associated with the facility. (*Buenavista v. City and County of San Francisco* (1989) 207 Cal.App.3d 1168, 1173; see also *Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 863 [§ 856.2, subd. (a)(2), absolutely protects County from liability, notwithstanding evidence that professional malpractice may have contributed to patient's escape].)

Regardless of whether Manzano intended to hurt himself or merely get away from Olive View, it is undisputed that he was a confined inpatient at Olive View when he removed the Plexiglass covering, broke the window, and exited his room through the window. Accordingly, we find as a matter of law that Manzano was an escaping person for purposes of immunity under section 856.2. (See *Forde v. County of Los Angeles* (1976) 64 Cal.App.3d 477, 480 [finding patient "escaped" because he left hospital without authorization]; *Brookhouser, supra,* 10 Cal.App.4th at p. 1686 [patient "escaped" when failed to return from approved leave, regardless of intent].)

Defendants met their burden on summary judgment of establishing a complete defense (immunity under section 856.2), and Manzano failed to present a triable issue of material fact on that defense.


III

Defendants also are immune under section 854.8. A public entity is immune from liability under subdivision (a)(2) of that statute for damages resulting from an injury "to

7

an inpatient of a mental institution." "However, section 854.8, subdivision (a) immunity is expressly subject to the exception of section 855, subdivision (a), which provides: 'A public entity that operates or maintains any medical facility . . . is liable for injury proximately caused by the failure of the public entity to provide adequate or sufficient equipment, personnel or facilities required by any statute or any regulation of the State Department of Health Services . . . prescribing minimum standards for equipment, personnel or facilities, unless the public entity establishes that it exercised reasonable diligence to comply with the applicable statute or regulation.'" (*Baber v. Napa State Hospital* (1989) 209 Cal.App.3d 213, 217 (*Baber*).)

Manzano argues that immunity under section 854.8 does not apply because defendants are liable under section 855 for their alleged violation of the California Code of Regulations, title 22, section 70583, requiring windows in a psychiatric unit to be modified to prevent patients from leaving the unit by way of a window.

In *Baber, supra,* 209 Cal.App.3d at page 220, the court found that regulations for licensing and certification of acute psychiatric hospitals using standards such as "'sufficient number of appropriate personnel'" and "'appropriate physical resources and personnel'" were not "insufficiently 'quantifiable' or objective to support liability under section 855." (*Id.* at p. 220.) However, the court explained that "if the ultimate proof fails to demonstrate that the standards were sufficiently specific to reasonably put [defendant] on notice of noncompliance, [plaintiff] will not have met his burden." (*Id.* at p. 221.)

Disagreeing with *Baber*'s interpretation of the minimum standards requirement under section 855, the court in *Lockhart v. County of Los Angeles* (2007) 155 Cal.App.4th 289, 308 (*Lockhart*), explained that "Government Code section 855 was intended to impose liability only when the statute or regulation sets forth a specific standard that gives the public medical facility clear notice as to the minimum requirements with which it must comply." The court concluded that "a regulation requiring 'sufficient nursing staff . . . to meet the needs of the patients' sets forth only a general goal within which a public medical facility may exercise its discretion, not a

8

specific minimum standard giving clear notice of the minimum amount of nursing personnel the facility must supply. It sets forth the general policy goal for staffing the psychiatric unit, but does not specifically direct the manner in which that goal is to be attained. This is not the type of regulation 'prescribing minimum standards for equipment, personnel or facilities,' the breach of which can give rise to liability under Government Code section 855." (*Ibid*.)

We need not decide whether the California Code of Regulations, title 22, section 70583, subdivision (a)(8)'s requirement that windows in a psychiatric unit be "modified to prevent patients from leaving the unit by way of a window" constitutes a specific minimum standard under section 855 because both *Baber* and *Lockhart* require the plaintiff to carry the burden of proving a violation of mandated minimum standards. (*Baber, supra*, 209 Cal.App.3d at pp. 220-221; *Lockhart, supra*, 155 Cal.App.4th at p. 309.)

On their motion for summary judgment, defendants presented evidence that the Plexiglass barrier and secured window in Manzano's room was in conformance with the applicable building code regulations, including regulations governing psychiatric unit windows and design. In response, Manzano submitted the declaration of Brad Avrit to argue that the unsafe nature of the Plexiglass window in Manzano's room was a violation of California Code of Regulations, title 22, section 70583. Defendants objected to Manzano's evidence on the grounds that Avrit's declaration lacked foundation, personal knowledge, and authenticity. The court sustained the objection. On appeal, Manzano does not challenge the ruling. "As a result, any issues concerning the correctness of the trial court's evidentiary rulings have been waived. [Citations.]" (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014-1015.) Because Manzano failed to present a triable issue of material fact, defendants met their burden on summary judgment of establishing a complete defense (immunity under § 854.8).

9

## DISPOSITION

The judgment is affirmed.  Defendants are entitled to costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

EPSTEIN, P. J.

We concur:

MANELLA, J.

COLLINS, J.

10